IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | NO. 3:20-cr-00054 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| | ) | |
| CALVIN TILLMAN | ) | |

**MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion to Suppress (Doc. No. 15, "Motion"), to which the Government filed a response (Doc. No. 17, "Response"), and Defendant filed a reply (Doc. No. 18, "Reply"). Via the Motion, Defendant moves to suppress the evidence recovered during a search of 723 Lake Terrace Drive ("the Residence"). Defendant argues that the search warrant on which the officers relied as authorization to search the Residence is invalid because the search warrant affidavit failed to establish probable cause. Defendant also argues that Detective Cory Hale, the affiant of the search warrant affidavit, intentionally or recklessly included false statements, and omitted important information from his affidavit which, if included, would have undermined the finding of probable cause. Defendant asks for a *Franks* hearing to explore these alleged false statements and omissions.

**I. Probable Cause in the Search Warrant Affidavit**

"Probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (en banc) (citing *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018)). In last year's en banc decision in *Christian*, the Sixth Circuit instructed that probable cause should be determined "[v]iewing the 'totality of the circumstances,' *Florida v. Harris*, 568 U.S. 237, 244 [] (2013),

through the 'lens of common sense,' as the Supreme Court has instructed, *id*. at 248[.]" *Id*. at 309. The court further explained:

> Time and again the Supreme Court has emphasized that [p]robable cause is not a high bar to clear. Where, as here, a magistrate has issued a search warrant based on probable cause, we do[ ] not write on a blank slate. Rather, the magistrate's probable-cause determination should be paid great deference, and we overturn that decision only if the magistrate arbitrarily exercised his or her authority. We are not permitted to attempt a *de novo* review of probable cause.

*Id*. at 311 (citations and quotation marks omitted). The "'haste of a criminal investigation' under which officers often draft an affidavit supporting a search warrant" is also relevant to a probable cause analysis. *Id*. at 310. Courts should keep in mind that "police officers are mostly non-lawyers who must draft search-warrant affidavits 'on the basis of nontechnical, common-sense judgments[.]'" *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 235-36 (1983)).

Even if a search warrant is determined not to have been supported by probable cause, such that the search was in violation of the Fourth Amendment, the fruits of the search are not necessarily suppressible. Pursuant to *United States v. Leon*, 468 U.S. 897, 905 (1984), "the introduction of evidence obtained in violation of the Fourth Amendment is permitted in criminal trials when the evidence is 'obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment.'" *United States v. Moorehead*, 912 F.3d 963, 968 (6th Cir. 2019) (quoting *Leon*, 468 U.S. at 909). A search warrant affidavit is insufficient for police to rely on in good-faith if it is "bare bones." But if an affidavit is not bare-bones, it is one upon which an officer can rely in good-faith. *Christian*, 925 F.3d at 312. In other words, the sufficiency of the affidavit turns completely on whether it is properly regarded as bare bones.

"[T]o be considered bare bones, an affidavit must be 'so lacking in indicia of probable cause' as to make an officer's 'belief in its existence [] objectively unreasonable.'" *Id*. (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005))). An affidavit is barebones only if

it "merely 'states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *Id.* (quoting *United States v. Washington*, 380 F.3d 236, 241 n.4 (6th Cir. 2004))). Further, "[t]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* at 313 (citation and internal quotation marks omitted).

i. *The Search Warrant Affidavit*

In the search warrant affidavit, Detective Hale lists the "Probable Cause Facts" as follows:

1. On 05/30/2019 Hermitage Crime Suppression detectives received a drug complaint in relation to 723 Lake Terrace Drive. The complaint stated the individuals at the location are using drugs.

2. On 06/06/2019 Officer Griepentrog responded to a complaint of drug use at 723 Lake Terrace Drive. When Officer Griepentrog walked to the front door she smelled a strong odor of marijuana coming from an open window that had a large box fan in it blowing air from out of the home. Officers knocked repeatedly on the door and did not get an answer.

3. On 06/06/2019 Hermitage Crime Suppression detectives received a drug complaint at 723 Lake Terrace Drive. The complaint stated the individuals that live at the location are smoking marijuana and the situation was escalating.

4. On 06/06/2019 Hermitage Crime Suppression detectives attempted to conduct at knock and talk at 723 Lake Terrace Drive. Detectives approached the front door of the residence and detected an obvious odor of marijuana coming from the door of the townhome. Detectives received no answer.

5. On 06/17/2019 Hermitage Crime Suppression detectives received a drug complaint and it stated there is a very strong odor of marijuana emanating from the townhome. The complaint stated the individuals inside of the residence are selling narcotics. Porsche Tillman (TN DL: 111356408) was listed as the suspect in this complaint.

6. On 6/28/2019, detectives conducted a trash pull at 723 Lake Terrace Drive after receiving information from an anonymous source that narcotics were being used and sold from the location. Detectives located a brown trash can located at the end of the driveway, open to the public, and on the street. The trash can was obviously abandoned and discarded material. The trash can contained two tied white trash bags. Detectives collected the trash bag and located 1 marijuana stem. Based on training and experience, these items were immediately recognized as illegal narcotics. There was mail located in the trash bag that contained the address of 723 Lake Terrace Drive.

(Doc. No. 17-1 at 3). On June 30, 2020, a state magistrate judge issued a search warrant to search the Residence. (*Id.*). The officers executed the search warrant at the Residence on July 2, 2019.

ii. *Probable Cause Analysis*

In the Motion, Defendant asserts that the fruits of the search of the Residence should be suppressed because "the warrant application failed under governing case law to establish probable cause for the search." (Doc. No. 15 at 1). The Government disagrees, relying on the following facts to establish probable cause:

> Over a month long period—from May 30, 2019 to the date Detective Hale obtained the warrant on June 30, 2019—MNPD (i) received three separate complaints (on May 30, June 6, and June 17, 2019) regarding drug use (and in one case, possible drug sales) at the Residence; (ii) had three different officers notice the smell of marijuana emanating from the Residence on June 6, 2019; and (iii) recovered a marijuana stem in a trash bag connected to the Residence on June 28, 2019.

(Doc. No. 17 at 18).

The Court agrees with the Government that the warrant affidavit established probable cause to search the Residence, based on a combination of the smell of marijuana emanating from the Residence and the marijuana stem recovered in the trash pull. The affidavit reveals that three different MNPD officers smelled marijuana emanating from the Residence on June 6, 2020. The Sixth Circuit has indicated that it "may be true" the smell of marijuana *standing alone* supports probable cause to search a home. *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002); *United States v. Yarbrough*, 272 F. App'x 438, 443 (6th Cir. 2007) (same). As one district court recently pointed out, "[t]he Sixth Circuit is not alone in that conclusion" and a "majority of courts are in accord, holding the same." *United States v. Vaughn*, 429 F. Supp. 3d 499, 535 (E.D. Tenn. 2019) (citing *United States v. Correa*, 347 F. App'x 541, 545 (11th Cir. 2009) ("The marijuana the agents smelled emanating from inside the houses provided probable cause to request and to issue the search warrants"); *United States v. Garcia-Zambrano*, 530 F.3d 1249, 1260 (10th Cir. 2008)

(holding "frequent observations of the smell of burning marijuana coming from Defendant's apartment, verified on four separate occasions by a trained police officer . . . was sufficient to support a finding of probable cause" to issue a warrant); *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) ("There is no doubt that the agent's suspicions rose to the level of probable cause when, as the door stood open, he detected what he knew from his law enforcement experience to be the odor of marijuana."); *United States v. McKeever*, 906 F.2d 129, 132 (5th Cir. 1990) ("Distinctive odors, detected by those qualified to know them, may alone establish probable cause" for a search warrant); *State v. Watts*, 801 N.W.2d 845, 854 (Iowa 2011) (holding the smell of marijuana in an apartment hallway which became "overpowering" after defendant opened his apartment door "provided probable cause for issuance of the warrant"); *Gompf v. State*, 120 P.3d 980, 986 (Wyo. 2005) (holding the smell of marijuana while lawfully inside a home in a common area supported "probable cause to justify the issuance of the search warrant"); *State v. Beeken*, 585 N.W.2d 885, 873 (Neb.1998) (holding "the smell of burning marijuana by a qualified person" supports probable cause to obtain a warrant); *State v. Rein*, 923 P.2d 639, 640 (Or. 1996) (holding, after excising unlawfully obtained evidence from affidavit, the smell of marijuana standing alone was sufficient evidence to support probable cause); *State v. Arpin*, 448 A.2d 1334, 1340 (Conn. 1982) (holding the smell of marijuana emanating from packages delivered to a home supported probable cause to issue a warrant); *United States v. Kerr*, 876 F.2d 1440, 1444 (9th Cir. 1989) ("By far the most incriminating piece of evidence was the odor of marijuana emanating from [defendant's] premises.")).

Even so, Detective Hale did not rely solely upon the smell of marijuana emanating from the Residence to support probable cause. He also relied upon the fact that a trash pull conducted two days prior to the issuance of the warrant revealed a marijuana stem and a letter containing the

address of the Residence.[1] In the Sixth Circuit, it is well established that drugs, even trace amounts of drugs, recovered from a trash pull establishes probable cause to search a home when combined with other evidence of the resident's involvement in drug crimes. *United States v. Abernathy*, 843 F.3d 243, 251-52 (6th Cir. 2016). Defendant argues that the evidence found in the trash pull does not support probable cause, relying heavily on the fact that only a single marijuana stem was discovered. It is true that the Sixth Circuit has before noted in an unpublished opinion that the presence of a single marijuana stem in a defendant's trash was "probably insufficient to establish probable cause." *United States v. Harris*, 6 F. App'x 304, 307 (6th Cir. 2001). However, the court eventually concluded that the marijuana stem corroborated earlier information that defendant was involved in drug activity. *Id*.

Here, while the marijuana stem considered in isolation, and perhaps even the officers' smell of marijuana emanating from the Residence considered in insolation, may not give rise to probable cause, the Court is to view the facts of the search warrant affidavit in totality. *See Christian*, 925 F.3d at 311. Viewed in combination, the multiple officers' smell of marijuana originating from the Residence, and the trash pull revealing a marijuana stem with a letter containing the address of the Residence give rise to a finding of probable cause. Thus, based on the totality of circumstances, the Court finds that these facts in combination demonstrate a "probability or substantial chance of criminal activity" in the Residence. *Christian*, 925 F.3d at 311 ("Probable cause is not a high bar to clear[.]") (citation omitted).[2]

---

[1] In *California v. Greenwood*, 486 U.S. 35, 39-41 (1988), the Supreme Court held that the Fourth Amendment is not violated by a warrantless search and seizure of the contents of a person's trash which has been placed on the street for collection.

[2] Although not raised by Defendant, the Court notes that the warrant here authorized a search for items usually constituting evidence of *drug trafficking* (*i.e*., bank records, flight records, pictures, computer records and weapons (Doc. No. 15-6 at 5)), while the warrant affidavit merely constitutes probable cause for *simple drug possession*, which is a (misdemeanor) offense in Tennessee. *See* Tenn. Code Ann. §39-17-418(a). This might seem significant at first

Defendant essentially argues that the information in the warrant affidavit, particularly the officers' smell of marijuana at the Residence, was stale. Defendant contends that

> Police did corroborate that, on June 6, someone was smoking marijuana in the townhouse. Since a box fan was being used to blow the smoke outside on June 6, there was a suggestion that the owner was not a marijuana smoker and did not want the smoke in the house. The trash-pull of June 28 simply served to reconfirm the point that marijuana was smoked in the townhouse on June 6 since the police found only a single stem that was possibly marijuana, and, although they found mail in the same garbage bag, they did not determine the date of the mail. So, they confirmed that someone—perhaps even a guest or a temporary occupant—was smoking marijuana in the house on June 6[.]

(Doc. No. 15 at 8). The Government argues that "even assuming that some of [the] evidence would otherwise be stale, it was continually refreshed throughout the month of June 2019 by additional evidence of drug use at the Residence, culminating with the June 28, 2019 trash pull." (Doc. No. 17 at 13-14).

---

glance, since the latter simply is generally not aided by, or requiring of, the rather serious tools and records associated with the former. However, the Sixth Circuit has explained that this scenario—where the warrant seeks of evidence of drug trafficking but the affidavit establishes probable cause only as to criminal conduct other than drug trafficking—does not affect the validity of the warrant, because the affidavit provided the required probable cause (of *some* crime):

> In finding the affidavit insufficient to establish probable cause for the warrant to issue, reversing the district court, the Weaver panel noted that the stated purpose of the search was to find evidence of suspected drug dealing; yet the affidavit itself had contained no information about the purchase the CI was supposed to have attempted, nor about the quantity of marijuana he observed, nor any other facts which would support a belief that drugs were being held in the house for sale. As this court observed of Weaver in another case, what was lacking in the Weaver affidavit was any indication of probable cause to suspect drug trafficking, the offense for which the warrant was expressly being sought. *See United States v. Smith*, 182 F.3d 473, 480 (6th Cir.1999). But that was not in itself fatal, since an affidavit need only provide probable cause to believe a search will uncover evidence of some wrongdoing, without need for further specificity. *See United States v. Anderson*, 923 F.2d 450, 457 (6th Cir.1991) (holding "that knowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that a crime was committed by the defendants").

*United States v. Allen*, 211 F.3d 970, 974 (6th Cir. 2000); *see also United States v. Abernathy*, 843 F.3d 243 (6th Cir. 2016) ("Here therefore, it does not matter whether the Affidavit established probable cause for marijuana possession, or marijuana trafficking; as long the Affidavit showed a fair probability that marijuana would be found in Defendant's home, the Warrant was justified.").

"Staleness is measured by the circumstances of the case, not by the passage of time alone." *Sgro v. United States*, 287 U.S. 206, 210-11 (1932). The Court looks to four factors to measure staleness:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?), (2) the criminal (nomadic or entrenched?), (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?), and (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009) (quoting *United States v. Abboud*, 438 F.3d 554, 572–73 (6th Cir. 2006)). "In the context of drug crimes, information goes stale very quickly 'because drugs are usually sold and consumed in a prompt fashion.'" *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010) (quoting *Frechette*, 583 F.3d at 378). However, "[e]vidence of ongoing criminal activity will generally defeat a claim of staleness" and "[r]ecent events can refresh otherwise stale information[.]" *United States v. Redmond*, 475 F. App'x 603, 610 (6th Cir. 2012); *see also United States v. Peterson*, No. 19-2278, 2021 WL 53256, at *2 (6th Cir. Jan. 6, 2021) ("But even if that statement is a stale one, including that evidence in a warrant affidavit is not fatal when, as here, recent information corroborates the stale information." (citing *United States v. Thomas*, 605 F.3d 300, 310 (6th Cir. 2010))).

All of the factors weigh in favor of finding that the evidence obtained in the trash pull was not stale. When law enforcement conducted the trash pull on June 28, 2019, and discovered the marijuana stem, it was the second time that officers had uncovered evidence of drug usage at the residence indicating ongoing criminal activity (the first being the detection of the smell of marijuana); thus, the first factor cuts against Defendant's requested finding of staleness. The Court rejects Defendant's unsupported argument that the marijuana stem found on June 28 was merely a confirmation that people within the Residence were smoking marijuana on June 6, twenty-two

days earlier; the stem's presence reasonably supports the inference that marijuana was possessed much nearer to the time of the discovery of the stem. The second factor, regarding the suspect and whether he or she is "nomadic or entrenched," clearly cuts against a finding of staleness, as all alleged drug activity was tied to the Residence, a particular location, and not to a subject appearing to be "nomadic" rather than "entrenched' at the Residence. In regard to the third factor, while evidence of drug crimes becomes stale very quickly, the most recent information (the marijuana stem found in the trash pull) was not stale, because it was only two days old. *See United States v. Bell*, ---F. Supp. 3d---, 2020 WL 7083966, at *5 (W.D. Ky. Dec. 3, 2020) ("the most recent information [in the warrant affidavit] was two days old, and, standing alone, was not stale" (citing *United States v. Yates*, 501 F. App'x 505, 511 (6th Cir. 2012))). The officers' smell of marijuana emanating from the Residence on June 6 was revalidated by the more recent information discovered in the trash pull. Finally, because the information was tied to the Residence, which properly is considered a "secure operational base" (even if only for the particular "operation" of possessing a contraband controlled substance), the fourth factor also cuts against Defendant. Thus, the Court finds that the information in the warrant affidavit was not stale.

Defendant additionally argues that probable cause is lacking because "the police did not tie any particular individual to the house through public records, and they did not prove that such individual had a record of dealing drugs or even simple possession charges." (Doc. No. 15 at 9). Defendants argument misses the mark. As the Government points out, the officers were not required to tie anyone to the residence, as "[s]earch warrants target places, not people." (Doc. No. 17 at 11 (quoting *United States v. Church*, 823 F.3d 351, 353 (6th Cir. 2016)). Accordingly, the Court rejects this argument.

Now the Court turns to the statements of the "anonymous" source relied upon by the Government. To support its argument that the affidavit established probable cause, the Government in its brief relies upon the three separate complaints (on May 3, June 6, and June 17, 2019) regarding drug use at the Residence. (Doc. No. 17 at 18). However, the warrant affidavit does not include the identity of the source who made the complaints, nor any details about how the source may have obtained such knowledge. And although the Government refers throughout its brief to the source as a "neighbor," the (alleged) fact that source is a neighbor is simply not included in the warrant affidavit;[3] thus, the affidavit cannot be credited with indicating that the source would be in a position to know something about drug use at the residence because the source was in physical proximity to the residence.

In fact, there is simply nothing in the search warrant affidavit that gives the anonymous source(s) any indicia of credibility or basis for knowledge of the reported information. The Court does not mean that there was *scant* indication of credibility or basis of knowledge. The Court means that there was *no* indication of credibility or basis of knowledge. Thus, the Court finds that the reports of the anonymous source(s) are entitled to no weight *at all* in the probable cause analysis.[4]

In some instances, where a tip to law enforcement is from an anonymous source and no information exists as to the informant's reliability, probable cause can still exist if the officer sufficiently corroborates the tip. *See United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010)

---

[3] For his part, Defendant seems to have missed the fact that the affidavit says nothing about any "neighbor," and he instead gives the affidavit too much credit by saying that it mentions "a neighbor known to the police." (Doc. No. 18 at 1-2).

[4] On the other hand, the Court does realize that the affidavit's recounting of the source reporting does accomplish at least one thing for affiant; namely, it tends to show something that the officers may wish the Court to realize, *i.e.*, that they did not target the Residence gratuitously, arbitrarily, or in bad faith. And the Court does not doubt that this is the case. But that does not mean that the complaints of the source(s) legitimately count towards a showing of (objective) *probable cause*, as opposed to (*subjective*) good faith.

("[I]n the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." (internal quotation marks and citations omitted)); *Peterson*, 2021 WL 53256, at *3 (explaining that the Sixth Circuit has set a "high bar" of "robust corroboration . . . in the context of warrants based on anonymous tips or confidential informants." (citing *United States v. Neal*, 577 F. App'x 434, 441 (6th Cir. 2014)).

It could be argued that the officers corroborated the anonymous statements when the officers attempted to perform a knock and talk, resulting in the observation of the smell of marijuana, and additionally when the officers conducted a trash pull to search for evidence of drug use. *See United States v. Willis*, No. 1:17CR474, 2018 WL 637463, at *5 (N.D. Ohio Jan. 31, 2018) (trash pull discovering drugs after anonymous tip's statement corroborated the anonymous source's statement). However, the Court questions whether these steps taken by law enforcement amounts to the "robust corroboration" that is required to corroborate an anonymous source's tip. *Peterson*, 2020 WL 53256, at *3. The Court need not answer this question, however, because even giving no weight to the statements from an anonymous source, the Court's above probable cause analysis and conclusion based on information excluding the source's complaints is unaffected.

Therefore, the Court finds that the warrant affidavit established probable cause to search the Residence, based on (and only on) a combination of the smell of marijuana emanating from the Residence and the marijuana stem recovered in the trash pull.[5]

---

[5] The Government also argues alternatively that the good-faith exception also applies to the warrant affidavit. The Court need not reach this issue (one that provides a potential alternative basis for upholding the validity of the warrant), because the Court has found that probable cause exists. And just as a court generally should refrain from resolving a constitutional question when a case can be deciding without resolving it, *see Escambia Cty., Fla. v. McMillan*, 466 U.S. 48, 51 (1984) ("It is a well established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case."), the Court here is hesitant to decide the constitutional question of the applicability of the good-faith exception when the motion can be disposed of on other grounds (here, the existence of probable cause).

**II. Franks Hearing**

Defendant argues that he is entitled to a *Franks* hearing because Detective Hale engaged in "deliberate falsehood" or "reckless disregard for the truth" when drafting the warrant affidavit. (Doc. No. 15 at 5 (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)).

A defendant is entitled to a *Franks* hearing if he: 1) "makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit"; and 2) "proves that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013). Warrant affidavits "carry with them 'a presumption of validity,'" and so the challenger's attack "must be more than conclusory." *United States v. Stuart*, 507 F.3d 391, 396 (6th Cir. 2007) (quoting *Franks*, 438 U.S. at 171). Therefore, a defendant who challenges the veracity of statements made in a sworn affidavit that formed the basis for a warrant bears a "heavy burden." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).

The defendant must identify specific false statements and then "accompany his allegations with an offer of proof," usually in the form of supporting affidavits. *Bennett*, 905 F.2d at 934. Moreover, "[t]he movant must also show that the allegedly false statements were necessary for the magistrate's determination of probable cause." *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008) (emphasis in original). Thus, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* (quoting *Franks*, 438 U.S. at 171–72).

The Sixth Circuit has "repeatedly held that there is a higher bar for obtaining a *Franks* hearing for an allegedly material omission as opposed to an allegedly false affirmative statement." *United States v. Fowler*, 535 F.3d 408, 415–16 (6th Cir. 2008). This higher standard is based on the "potential for endless rounds of *Franks* hearings due to potentially endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." *Id.* (internal quotation marks and citation omitted). Thus, "*Franks* is generally 'inapplicable to the omission of disputed facts, except in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit.'" *United States v. Shaffer*, 238 F. Supp. 3d 913, 918 (E.D. Ky. 2017), *aff'd*, No. 17-6492, 2019 WL 2929932 (6th Cir. July 8, 2019) (quoting *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998)). "If the defendant does succeed in making a preliminary showing . . . the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists." *United States v. Carpenter*, 360 F.3d 591, 597 (6th Cir. 2004).

i. *Alleged False Statements*

Defendant argues that he is entitled to a *Franks* hearing because Detective Hale made material misstatements in the warrant affidavit.

*Statement 1: Description of Drug Complaint Coming from an Anonymous Source*

In the warrant affidavit, Detective Hale stated that the detectives conducted a trash pull on June 28, 2019 after "receiving information from an anonymous source that narcotics were being used and sold" from the Residence. (Doc. No. 15-6). Defendant attacks this statement as false because "[t]he affiant's statement that complaints were 'anonymous,' when in fact all of the complaints came from Covington [(the neighbor)]" and Defendant contends that by using the term

"anonymous" Detective Hale implied that the information in the warrant could have come from several different sources, not just one person. (Doc. No. 15 at 3).

In response, the Government first argues that MNPD received drug-related complaints about the Residence from several sources, including an anonymous source on May 30, 2019, so even if Detective Hale implied what Defendant claims he implied, that implication would be correct. (Doc. No. 17 at 6). Second, the Government argues that even assuming Detective Hale was referring to Ms. Covington through use of the term "anonymous source," such use of the term "anonymous" rather than specifying the identity of the source as Ms. Covington does not affect the probable cause analysis as identifying the source as "anonymous" actually weakens the indicia of probable cause in the warrant affidavit. (*Id.*).

The Court agrees with the Government on the second point.[6] Even if the Court were to excise the statement of the "anonymous source", Defendant would not be entitled to a *Franks* hearing, because the statement does not pass part two of the *Franks* test: Defendant must "prove[] that the false statement or material omission is necessary to the probable cause finding in the affidavit." *Rose*, 714 F.3d at 370; *United States v. Green*, 572 F. App'x 438, 441 (6th Cir. 2014) (explaining that the defendant has the heavy burden of demonstrating that "the allegedly false statement[s] [were] necessary to the finding of probable cause.'").

As discussed in further detail above, the Court gives little weight to the statement of an anonymous source in an affidavit where the affidavit does not divulge the anonymous source's basis of knowledge, reliability, or veracity. *See Navarette v. California*, 572 U.S. 393, 397 (2014)

---

[6] In regard to the Government's first point, the Court agrees with Defendant that there is nothing in the record (and certainly nothing in the affidavit) to support the Government's assertion that the source of the May 30 complaint was anonymous, rather than a known person (be it Ms. Covington or otherwise). (*See* Doc. No. 18 at 9). Likewise, contrary to the Government's suggestion, there is nothing in the record to suggest that the quoted reference to an "anonymous source" was a reference to the source of the May 30 complaint rather than the source of later complaints.

(stating that an "anonymous tipster's veracity is by hypothesis largely unknown or unknowable") (citations and internal quotations omitted). And as also described above, considering the affidavit in its totality, the statement of the anonymous source was not necessary to a finding of probable cause. In fact, in his Reply, Defendant concedes that "[t]he government is correct that if, even after making the redactions proposed by [Defendant], the warrant affidavit nonetheless establishes probable cause to think marijuana was in the townhouse on June 30, 2019, then a *Franks* hearing would be unnecessary and his motion would fail." (Doc. No. 18 at 1). As noted above, the Court simply is not considering the source information mentioned in the affidavit in determining whether the affidavit sets forth probable cause. Because Defendant has failed to make a "substantial preliminary showing" that this specific alleged falsity would have affected the determination of probable cause, his motion for a *Franks* hearing is denied to the extent made on this particular basis.

*Statement 2: Description of Occupants of the Residence Selling Narcotics*

In the warrant affidavit, Detective Hale averred that the anonymous source "stated the individuals inside the Residence are selling narcotics." Defendant maintains that this statement is materially false because Ms. Covington now maintains that she complained to MNPD that the occupants of the Residence were *using* narcotics, not *selling* narcotics. (Doc. No. 15-4).

The Government contends that Ms. Covington in fact did tell Detective McClain that the occupants of the Residence were selling drugs, and this is supported by Detective McClain's contemporaneous written account of that conversation, and his sworn affidavit submitted in response to the instant Motion (as opposed to his warrant affidavit). (Doc. No. 17 at 7 (citing Doc. No. 17-5, Doc. No. 17-7). Thus, the Government maintains that Defendant has not met his burden to show that the statement in the warrant affidavit is false. The Government also argues that even

if the Court were to find that Detective Hale's statement was somehow misleading, it was not necessary to support a finding of probable cause. (*Id.*).

At this stage, the Court cannot determine the credibility issue presented here: whether (as the Government claims, with support) Ms. Covington indeed told the detective(s) that the occupants of the residence were selling drugs. But this does not mean that Defendant is entitled to a *Franks* hearing, because for the same reasons stated above, the anonymous source's statement that the individuals within the house were selling narcotics, in the Court's view, is not necessary to a finding of probable cause and in fact was not even considered by the Court in assessing whether the warrant set forth probable cause. Thus, because has failed to make a "substantial preliminary showing" that this specific alleged falsity would have affected the determination of probable cause, his motion for a *Franks* hearing is denied to the extent made on this particular basis.

*Statement 3: The Date of the Anonymous Source's Complaint*

In the warrant affidavit, Detective Hale stated, "On 6/28/2019, detectives conducted a trash pull at 723 Lake Terrace Drive *after receiving information from an anonymous source that narcotics were being used and sold* from the location." (Ex. 6, Warrant Aff. at 3 (italics added).) Defendant argues that the italicized phrase suggests that police received the "information" on June 28 and, later that same day, they did the trash pull. But Defendant contends that the last complaint actually occurred on June 16 or 17. (Doc. No. 15-3 at 23).

In response, the Government argues that "the statement was nothing more than surplusage" that does not amount to a false statement. (Doc. No. 17 at 7). Setting aside the (colorable) claim that the statement was surplusage, the Court agrees that the statement is not false. The statement Defendant attacks does not explicitly indicate that the information was received from the

anonymous source on the same day the trash pull occurred. The language merely says that the trash pull was conducted "after" (without saying how long after) such information was received by the anonymous source. Accordingly, as the statement simply does not say (or even imply) what Defendant contends it suggests, the statement is not false in letter or spirit. Additionally, for the reasons articulated above, because of the lack of weight the Court gives any statement from the anonymous source, even if the statement were false, it would not change the Court's probable cause analysis. Accordingly, a *Franks* hearing is denied to the extent made on this basis.

*Statement 4: Boilerplate Language*

Defendant also attacks the "boilerplate assertions about violators of drug laws." (Doc. No. 15 at 8). Defendant offers as an example the boilerplate assertion that the kind of people "about whom Covington had complained"—meaning, apparently drug traffickers generally—"often attempt to legitimize profits from the sale of drugs and other criminal activities" by, *e.g.*, "establish[ing] . . . phony or 'shell' corporations." (Doc. No. 15 at 5, 6 (quoting 15-6 at 7)). The Sixth Circuit has rejected similar "boilerplate" arguments "[a]s long as there is sufficient information to provide probable cause for the search." *Green*, 572 F. App'x at 441-42; *see also United States v. Moore*, 661 F.3d 309, 312 (6th Cir. 2011) (upholding a largely boilerplate search-warrant affidavit where an unnamed confidential informant had witnessed the defendant engaging in drug transactions). The court explained that officers' recycling of "boilerplate language . . . does not necessarily mean that those officers knowingly, intentionally, or recklessly included false statements" in a warrant affidavit. *Green*, 572 F. App'x at 441-42. This makes sense, inasmuch as typically the main gripe (which the Court certainly understands) with boilerplate language is less that it is *false* than that it overly general and thus not necessarily probative in (or even applicable at all to) the situation at hand.

Here, the Court has not even relied upon the boilerplate assertions. As noted above, the Court has found not that the affidavit set forth probable cause of drug trafficking—which is the criminal activity to which such language relates—but rather than it set forth probable cause of simple possession of marijuana, to which such language does not relate. Defendant has simply not met his burden to demonstrate that the boilerplate assertions were necessary to a finding of probable cause; plainly, they were not. Additionally, as discussed, *Franks* requires a defendant to "point to specific false statements" and then "accompany his allegations with an offer of proof." *United States v. Cummins*, 912 F.2d 98, 101, 103 (6th Cir. 1990). Defendant has done nothing to demonstrate that the boilerplate language present in the warrant affidavit is false. Therefore, his motion for a *Franks* hearing is denied to the extent made on this particular basis.

   ii. *Omissions*

Defendant argues that he is entitled to a *Franks* hearing because the following omissions from the warrant affidavit were materially misleading:

1. The omission that the surveillance of the townhouse that failed to turn up any sign of suspicious activity.

2. The omission that the supposed suspect, Defendant, had no criminal record except for once driving without a license.

3. The omission that Defendant had no evident long-term tie to the residence, and even the recovered mail was not linked to her.

As discussed above, "*Franks* is generally 'inapplicable to the omission of disputed facts, except in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit.'" *Shaffer*, 238 F. Supp. 3d at 918. Here, Defendant is far from making that showing. It was simply not misleading for Detective Hale to omit the information that surveillance of the townhouse failed to turn up any signs of suspicious activity. There is no reason to believe that such surveillance was so extensive

that negative results from the surveillance would tend to suggest the absence of criminal activity. To hold otherwise would essentially require law enforcement to disclose in a warrant affidavit nearly every investigative method used, even if such method did not reveal relevant evidence, to pass muster under *Franks*. The Court declines to imply that if nothing is detected from surveillance that, for example, lasts for a few hours on a couple of days, that is materially probative of whether criminal activity might be occurring at the location at other times. And negative results from surveillance here clearly does not suggest the absence of the crime for which the Court has found probable cause: simple possession of marijuana. Such a crime could have occurred inside the Residence (using marijuana brought unseen into the Residence), outside of the vision of law enforcement, no matter how thorough surveillance was on the Residence.

Additionally, it was not misleading for Detective Hale to omit the information about Defendant's (lack of) criminal history, or that Defendant had no long-term ties to the residence, because the affidavit did not inform the magistrate judge otherwise, or include information that would lead a magistrate judge to assume such things. Stated another way, these omissions are simply not critical omissions, because the warrant affidavit did not claim that Defendant had a criminal history, or that Defendant had any long-term ties to the Residence. Indeed, the affidavit was concerned with establishing probable cause as to the *Residence*, not as to *Defendant*. And in any event, a person's lack of criminal history is not very probative of whether they are committing the misdemeanor crime of simple possession of marijuana. Therefore, Defendant has failed to make a strong preliminary showing that Detective Hale, with an intention to mislead, excluded critical information from the affidavit. Therefore, a *Franks* hearing on the basis of the omissions will be denied.

CONCLUSION

The Court well understands that the warrant affidavit in this case was not a model of thoroughness or clarity. If affiants want their affidavits to withstand constitutional challenges in federal court they would be prudent to err on the side of additional information and clarity. Nevertheless, the affidavit here was sufficient to clear the not-so-high bar of probable cause as to simple possession of marijuana, even excluding the source information and other statements Defendant asserts are objectionable.

For the above-mentioned reasons, Defendant's Motion to Suppress is DENIED.

An appropriate Order will be entered.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE